Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 23-1353, Chazrek Heredia v. Michael Roscoe. At this time, would counsel for the appellant please come and introduce themselves on the record to begin? Could you do it again on the microphone? No problem. I would like to reserve three minutes of my time for rebuttal if I may. You may. Okay, let's proceed. This appeal stems from the district court's order denying a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. In this lawsuit, the plaintiff appellee, Mr. Chazrek Heredia, alleged that Officer Roscoe, as well as other Manchester police officers, violated his constitutional rights when they arrested him during a street riot where Mr. Heredia and his friends were intoxicated, resisted arrest, and were physically combative towards the police. At one point in this interaction, Mr. Heredia was in a physical altercation on the ground with another police officer, where he kicked that officer in her chest, throwing her off-balance, and he then grabbed a hold of that officer's head by latching onto her hairbun with one of his hands. Following four days of trial, the jury returned a verdict against Officer Roscoe on one claim, finding that he used more force than reasonably necessary when he arrested Mr. Heredia. The jury awarded nominal damages in the amount of $1, punitive damages in the amount of $2,000, and no compensatory damages. Officer Roscoe renewed his Rule 50A motions for judgment as a matter of law into a Rule 50B post-trial motion, and there were three issues that were raised. One, that Officer Roscoe's force was objectively reasonable as a matter of law. And the alternative, that qualified immunity applies. And lastly, that the district court remit the punitive damages award. Isn't the reasonableness of the force a factual issue, and hence, for the jury's province? The issue in this case is that the district court never should have submitted this case to a jury, because it was clear as a matter of law, based on the trial evidence, at the close of the evidence, that Officer Roscoe's force was objectively reasonable. Let me direct your, so there's three sort of claims of excessive force here, right? We have the takedown, the punches of Officer Stewart and Mr. Heredia, and then the taser. And the armbar. Yes. But, so, I see from your briefs that your view of the evidence is that Mr. Heredia doesn't dispute that he held Officer Stewart's head and hair, and that at least two officers testified that Stewart was being punched by Heredia, right? That's correct. That, I think, is your view of the evidence. But what are we to make of the other testimony by non-officer witnesses and by Mr. Heredia, that Mr. Heredia was not punching Stewart, given our obligation to view the evidence in the light most favorable to the non-viewing party, which is, the non-moving party, which is Mr. Heredia? The dispositive fact in terms of the reasonableness of Officer Roscoe's use of force in that moment is not disputed by Mr. Heredia or even his trial witnesses. He doesn't dispute that he was in an altercation on the ground with Officer Stewart, and he does not dispute that he held onto her hairbun with one of his hands. He disputes what he did with that other hand, whether he punched her, slammed her head to the ground. Those are the facts that he disputes. But considering the objective, reasonable test for an officer in Officer Roscoe's position, the test is not whether Mr. Heredia actually posed a threat to Officer Stewart. It's whether a reasonable officer in Officer Roscoe's position would believe that Mr. Heredia posed a threat. And I think on those undisputed facts that Mr. Heredia concedes, he's on the ground with an officer who he's larger than. She was a small female officer, and he had a hold of her head by her hairbun. He was controlling her head by her hairbun. So I think those are the relevant facts. So even having to construe all reasonable inferences in Mr. Heredia's favor, those are the only facts that matter in terms of the objective reasonableness of Officer Roscoe's use of force. Counsel, but I think as Judge Montecalvo was pointing out, there are various claims about excessive force, and there's two claims before the interaction with Officer Stewart, the arm bar and then the takedown. And obviously the interaction with Officer Stewart has not happened before the takedown. Did you ask for any sort of special verdict from the jury so that we could know which excessive force claim was accepted and which was rejected? In the final pretrial conference, we did raise a potential jury instruction of a special interrogatory form. That just didn't end up happening in this case. Did you preserve that issue? We didn't preserve the issue. So do you agree that for us to affirm the district court's ruling here, we only have to find that a reasonable juror would have found excessive force on one of these claims? No, I think that, well, I mean, first of all, I think on the three issues that we've raised, we haven't even gotten into the issue of qualified immunity. So I don't think that it should be affirmed on the basis that Officer Roscoe's force was objectively unreasonable as a matter of law. I think that in the alternative, this is clearly a case where qualified immunity should apply. Counsel, asking you to focus on the qualified immunity issue, I think that the cases that you relied on primarily in your brief, they seem to concern quite different facts from the facts here. So for example, one of the cases involved the individual leading the police in a dangerous car chase through the public streets. Why are those cases really on point, given the facts here? Because we have multiple instances of force here, we've set forth clearly established law that we've tried to match the exact circumstances that Officer Roscoe was confronting at a particular moment. So I'm not sure exactly what case that Your Honor is referencing, but the cases that we have relied upon are intended to demonstrate the facts and circumstances that Officer Roscoe confronted in terms of the level of resistance here. It took a long time to get Mr. Heredia into custody and under arrest. He was a continuing threat in terms of a reasonable officer in Officer Roscoe's position, based on the level of resistance would continue to feel that he was a threat and was not going to... But Counsel, again, I would ask you to, you know, there are different moments in time. So at the moment, for instance, the Officer Roscoe uses the arm bar and at the moment he then proceeds to do the takedown, none of the events with Officer Stewart have occurred. There's no indication anyone thinks he's armed. What case do you have that shows that it was reasonable to use a takedown in the circumstances that were, you know, at issue here? I understand. So I would say that Statuen v. Palmer out of the First Circuit, that case supports the type of force that Officer Roscoe used in that situation, given the facts and circumstances that he confronted. Although it was the beginning of the interaction, Mr. Heredia was resisting arrest. He was clearly intoxicated. He didn't dispute that at trial, that he was intoxicated. In addition, I would say Therian v. Town of Jay, that's a case out of the District of Maine. The Officer specifically in that case did use a takedown. Okay, but is that a Circuit Court or a District Court decision? That is a District Court decision. Okay, but District Court decisions normally don't give you qualified immunity. I would say that Statuen v. Palmer, I might not pronounce this correctly, but the Association v. Muller case out of the First Circuit. That was a similar kind of crowd control situation. I mean, we're focused a lot on Mr. Heredia here, but Officer Roscoe is also confronting a felony level street riot. There was other people involved in this interaction beyond just Mr. Heredia that were resisting. Counsel, was there a riot at the time that he applied the armbar, the takedown? Again, we need to be very specific here, and you talk about this Palmer case and resisting arrest, but there was this factual dispute about whether Mr. Heredia was resisting arrest at that moment, at those initial moments. And again, as my other colleagues have pointed out, we need to view the jury verdict in the light most favorable to the jury's finding. There's no special verdict form, so we actually have to look and see if the facts would support a reasonable jury concluding that he was not resisting arrest. So again, can you really focus in, laser in on those issues and why your client should deserve to win in light of that standard that we have to apply in the facts early on in the interaction? Mr. Heredia was guilty of three counts of resisting arrest in this interaction. I don't think there can be a dispute. Okay, but you can still be guilty, but there still can be a constitutional violation, excessive force. And again, one of the issues, as Judge Rickleman said, there's no special verdict. For whatever reason, it wasn't preserved, but there's several incidents. So in the light most favorable to the verdict, isn't it unreasonable for a jury to find at least one of those occasions this happened, there was excessive force? I don't think there can be any challenge to the fact that Mr. Heredia wasn't resisting arrest where there were these three guilty findings. I mean, the jury's factual findings don't eviscerate the fact that Mr. Heredia was guilty of three counts of resisting arrest. I think there can be no dispute, even based on the video footage, that even at the beginning of the interaction, Mr. Heredia was noncompliant. Whether we want to frame it as resisting arrest or not, he was disobeying lawful orders from a police officer. He was given an opportunity to just move along, to exit the roadway. But at that point in time, he was being drunk and disorderly, and he was kind of engaging in this verbal spar with the police. At that point, the police were outnumbered. There were only two officers that had arrived on the scene at that time before other officers responded to assist. So I think there can be really- I think the problem is, though, and this is what I think our questions are getting at, is when there's a dispute of facts, given the way we need to weigh the evidence here, the evidence is, it's reasonable to conclude that the jury inferred excessive force based on ABC. So what I think we're wondering is, where is there no dispute about the facts? Because even on the takedown, if we agree that Mr. Heredia was resisting, and I'll give you that, and we, you know, I read Officer Roscoe's testimony about exactly how he did the takedown, and he testified he tried to protect Mr. Heredia when he fell to the ground, et cetera. But then Mr. Heredia testifies very differently from that. And so could a jury take that testimony? Is it reasonable to take that testimony and infer excessive force? What is your best factual argument as to that? Our best factual argument is that there is no dispute that Mr. Heredia was drunk. He testified that he was drunk. I think there's nothing wrong with that, but it just inherently, you're not going to obey orders. You might not be behaving at your best or your most compliant. There is no dispute that physically his body resisted arrest. There's a dispute about whether he knew it was Officer Roscoe that was trying to place his hands into handcuffs, but he doesn't dispute that he, his body behaved responsibly in a way that, you know, he resisted and didn't want to be touched. So his body language is a favorable fact. There's no dispute that this was a chaotic situation where there were multiple people behaving drunkenly and disorderly. Okay. Thank you. You've got three minutes reserved. Okay. Let's hear from Mr. Hipple. Please introduce yourself on the record to begin. Good morning and may it please the Court. I'm Attorney Seth Hipple. I and my co-counsel, Attorney Stephen Martin, represent Chazzer Heredia and represented him at trial. Roscoe's argument relies on a reading of the facts that is inconsistent with the Court's clear precedent that facts are to be viewed in the light most favorable to the verdict. This Court should affirm the lower court's decision and the jury's verdict. First, this Court should affirm the jury's verdict finding that Roscoe used excessive force because that verdict is well supported by the record evidence. Second, Roscoe is not entitled to qualified immunity because it was clearly established that officers are not to use more force than necessary and must reduce the amount of force used when resistance to their efforts stops or decreases. I know there's no requirement to have an exact factually similar case in the qualified immunity context, but are there any factually similar cases that you've pointed to that clearly established that the use of force here was appropriate? There is a case, Your Honor, which I believe is cited in the Jennings case in which there was a person running from the police and resisting arrest but then submitted to the arrest afterwards and the court found that the officer used excessive force when making that arrest and found that even though he had been resisting prior to the arrest, the fact is that once that resistance stopped or decreased, it's the officer's responsibility to then modulate the amount of force to the amount of resistance that's being faced. And when we talk about the first use of force, the takedown, Officer Roscoe, he testified that he told Chasrick to put his hands behind his back, but three witnesses testified that that did not happen and rather than telling Mr. Heredia to put his hands behind his back, he simply grabbed him and when Mr. Heredia realized it was an officer and raised his hands with his palms forward, the officer, again, he was flanked by Officer Harrington, he could have, again, said put your hands behind your back or tried to handcuff him. He didn't do that. He just went straight to slamming his head into the pavement and both the fact, both the takedown itself in that situation when even assuming arguendo that Mr. Heredia resisted the armbar, putting aside, you know, the fact that he didn't know that it was an officer, but even assuming that arguendo, once Mr. Heredia raises his hands in the way that he did, it is Officer Roscoe's responsibility then to modulate the amount of force and he didn't do that. In fact, he increased the amount of force. So when Mr. Heredia surrendered, then Officer Roscoe increased the amount of force by slamming his head into the pavement. So both the use of force and then the way that he used the force and the fact that he didn't protect Mr. Heredia's head, both of those things indicate that that force was  used. Because as opposing counsel mentioned, there was not a special verdict for him. So I assume the jury was asked to find, is there a violation, but there's maybe two, three, four different instances where excessive force could have been used. So my question is, as long as the jury found one of those, it could, you know, like, you know, it could rule in your client's favor and under our standard review, we would probably have to affirm. That's my understanding. I believe you're correct, Judge Helpe. It could be the arm hold and the jury found just for the arm hold and said everything else after that was reasonable. It could say taser, it could, you know, take down. It could be either or oral. Yes. And any single one of those uses of force, Your Honor, being found to be excessive would be enough for this court to affirm, to require this court to affirm based on the facts. Counsel, that would be enough for us to affirm on the excessive force finding. But I'm wondering if you can share your view on which particular excessive force claim that you brought on behalf of your client you think best supports the district court's decision on qualified immunity. So if we're actually focusing in on the qualified immunity analysis, which is, of course, part of the appeal, do you have a view on which of the excessive force claims the law is most clearly in your favor? I'll give you a lawyer answer, Judge Ruckelman. I'm not sure that I would pick one. I think that all four of them are very strong for qualified immunity. I've already talked about the takedown. But the punches to the back of the head, I mean, Officer Roscoe admitted that he could see Chasrick's hands at the time that he was landing those blows to the back of his head. And Chasrick testified that he had let go of Officer Stewart's hairbun before the first time he was punched in the head. So the idea that Chasrick holding onto the hairbun justifies it, it doesn't hold up under the facts. And so we see, and again, Officer Roscoe admitted that he continued landing punches, one after the other on his head, which could have killed him. And he kept landing those punches until Joshua Heredia intervened to stop him. And so it's very clear there that Officer Roscoe used excessive force and knew he was using excessive force because he observed that Chasrick's hands were doing nothing but holding his cell phone. The opposing counsel, though, Officer Roscoe's counsel, though, argues that your client pleaded guilty to various counts of resisting arrest. And one of them, I believe, was a felony resisting arrest for Officer Stewart. And the facts are clear, based on the video, that he did grab her bun. And he admits to, I think, pushing her with his feet. Officer Roscoe says that equals kicking, kicking an officer and grabbing her hair, her head. That's quite serious. So why is it unreasonable for Officer Roscoe to then take steps to subdue your client when he's just essentially attacked his fellow police officer? It is not unreasonable for Officer Roscoe to take steps to subdue Mr. Heredia in those circumstances. It is unreasonable to use more force than is necessary in order to do that. And so, again, when the force or when the resistance decreases or stops, it is incumbent upon the officer to modulate the amount of force that he's using to the resistance that he's actually facing. And the other thing is, when the third use of force that we're talking about is tasering Chasrick the second time, he was tasered two times, we're challenging the second tasering. Because before Officer Roscoe tasered him the second time, Chasrick had verbally stated, OK, OK, I will. And he's giving himself up. He says, my arm is stuck under his body. And Officer Roscoe, at that time, after he says he's giving himself up, Officer Roscoe tasers him a second time. And then the fourth use of force that we're challenging is that he then ripped the taser prongs out of his back. Now, at the time that Officer Roscoe did that, Chasrick was handcuffed. He was handcuffed at the time that this force was used. So there's no reason that Officer Roscoe could have done that other than to punish Chasrick. And we know that force that is meant just to punish is not reasonable, and it's a violation of the Fourth Amendment. Let me ask you also about qualifying immunity in this particular scenario. It's very fact specific, because obviously, the jury is looking at the facts. So the way that the qualifying immunity analysis is done after the trial, again, would be in the light most favorable to the verdict, correct? Yes, Your Honor. And there would be factual issues remaining. So it's not like it's a clear court question. Can officers use a taser, for example? That's a real issue of law. This is factually based. Could you state that another way, Your Honor? No, that for the purpose of qualifying immunity, it would be easier for us if it's a pure legal question. For example, can an officer tase somebody, or use a taser, again, I'm just coming up with that example. Sure. Here, it's can an officer tase somebody twice, but look at all these disputed facts and there's a jury finding. Isn't that correct? Yes, Your Honor. But of course, the fact that the facts are disputed is only really relevant before the  After the trial, the jury has settled those factual disputes. So we look at it in the light most favorable to the verdict. That's correct. And let me also ask you, I assume I've asked this question again, multiple times, I guess, but a special verdict form could have been asked, pinpointing every single instance, and it would have made our job more easier, correct? And that's not in the record. That very well may be the case, Your Honor, but yes, that was not done in this case. But I do understand how that could have made it easier, but yes, that was not the verdict form that was used. Counsel, can I turn you back to Judge Monacova's earlier question about sort of the clear consensus of case law or controlling authority that would be sufficient to deny qualified immunity here? Do you have a case you're relying on other than Jennings? I was just trying to confirm. I think that the Jennings case is the strongest case in our favor. And as I mentioned, there was a case that cited in Jennings also related to a suspect that had been resisting and then eventually submitted. But you know, this case is stronger than Jennings. Can you explain why you think Jennings is enough on its own? I understand you're also saying a case that's cited, but why do you think Jennings on its own should be enough here? Yes, Your Honor, this case is stronger than Jennings because in Jennings, the officers could not see the suspect's hands and they believed that he might have a weapon. In this case, the officers in each of the uses of force either had complete control of Chaswick's hands or they could see them. So the first use of force, his hands are raised. The second one, Roscoe testifies, he could see his hands when he's punching him. The third one, he's in the control of the officers when he gets the taste the second time. And then the fourth one, his hands are handcuffed when the prongs are ripped out. So at no point were the officers, as they were in Jennings, concerned about where his hands were, at least when these uses of force are concerned. And at no point during the entire encounter do the officers mention any concern about there being a weapon. And so those two facts make our case actually stronger than Jennings. But there were also similarities to Jennings. For instance, like in Jennings, when the amount of force necessary is, when a decreased amount of force is sufficient, the officer then increased the force, right? So when Chaswick raises his hands, rather than responding with less force, Officer Roscoe increased the force. When Roscoe observed Chaswick's hands doing nothing but holding a cell phone, he continues punching. He increases the force. When Chaswick is handcuffed, he increases the force by ripping the taser prongs out. And that is very similar to Jennings. And Roscoe's own expert testified at trial that these strikes to the head would not be justified if Chaswick was not holding onto Stewart's hair bun and punching her when it occurred. And given the light that this court is required to view the facts in, that means that Roscoe's expert testified that Roscoe was not justified in using the force he used based on the facts as found by the jury. I believe the case, by the way, that I was referencing related to the suspect who was running and then was submitted to arrest, I think, is the Smith case. And I would also argue, Your Honor, that the other side is arguing that in order to defeat qualified immunity, we need a blow-by-blow situation that's pretty much just like this. And that's just not the case. The Jennings court made the use of force continuum into Fourth Amendment law so that the use of force continuum is what all officers are trained on. Officer Roscoe testified that he was trained on the use of force continuum, and that is Fourth Amendment law in this circuit. And so no reasonable officer would have believed that the force he used was the minimum required. And so he definitely had notice that using more force than necessary under the force continuum was not permitted. And it's... But we do need more than that to deny qualified immunity. I mean, we don't need a case that's exactly, exactly the same, but we need a case that's almost exactly the same under our standard, correct? Under the Supreme Court standard, I should say. Yes, Your Honor. And I think that the Jennings case saying that when the... Once the purpose of the force is achieved, that you can't increase the force at that point. And this is a directly on-point case that an officer, when facing a person who is decreasing his resistance, increased his force. And you know, the other side will often talk about the fact that there was a street riot and there were all of these other facts, but there was no riot until Officer Roscoe used excessive force. There was no riot at the time that he slammed Cheswick's head into the pavement. Officer Roscoe caused this riot. And once again, if Joshua Veredia had not intervened to stop Officer Roscoe, he very well may have killed Cheswick. And that doesn't mean that Joshua Veredia was not found criminally liable for that, but it does mean that there was a reason that it became a riot. It's because he made the situation more dangerous than it was. He was not a peacekeeper. The situation... The witnesses testified, Roscoe testified very differently, but the witnesses testified the situation was under control. They weren't being asked to leave the area. They weren't in the middle of the roadway. The situation was fine until Officer Roscoe got involved and made it into a violent situation. Roscoe was angry, and his anger made him act unreasonably. Counsel, are you contesting that your client didn't follow the initial police order to move along and get out of the roadway? I thought that was uncontested here. I... We are contesting that Cheswick was at any point ever in the travel lane of the roadway. That is a contested fact. Not that he was asked to move along, right? It's clear that the officers asked them to move along. The officers indicated that they asked the group to move along, but... But he was part of the group, wasn't he? Yes, Your Honor, but the... Being asked to move along is, you know... He's not required to do that at that point. He's not required to obey a police order? Well, he was... The bar was still open. He was still welcome inside. There's a reason that Roscoe lied about the fact that Cheswick was being thrown out of the bar. He lied and said Cheswick was not allowed in the bar, if I may. But the facts are that Cheswick was allowed back into the bar. So there was no reason that he had to overrule the bar staff and tell Cheswick that he wasn't allowed to go back in when the bar staff was telling him he was. Okay, thank you.  Ms. Forey, you've got three minutes for rebuttal. Please reintroduce yourself on the record to begin. Keelan Forey for the defendant appellant, Officer Michael Roscoe. There's a couple points that I'd like to go over based on Mr. Heredia's position here. But I think the first one, the most significant one, is that to suggest that Officer Roscoe was the violent aggressor in this case is offensive. Mr. Heredia held a female police officer's head to the ground by one of his hands, and he doesn't dispute that. That's offensive, that's unacceptable, putting this entire fact of the matter aside. But one of the points that I wanted to go back over from my previous position was that in this case, the reasonableness of Officer Roscoe's use of force must be judged from the perspective of a reasonable officer on the scene. And so all of the facts and the evidence that have been discussed by both sides in this case, it's whether a reasonable officer in Officer Roscoe's position would believe that Mr. Heredia was resisting arrest, not whether Mr. Heredia was actually resisting arrest, whether it was possible that a reasonable officer would perceive that Mr. Heredia posed a threat to the safety of other officers, including the officer that he was on the ground with. But next, I'd like to turn to this issue of qualified immunity, because I think that where the district court erred here in denying our post-trial motion for qualified immunity is that Mr. Heredia's objection does not set forth clearly established law. It has to be specific to put that officer on notice that his conduct that night could violate the law. And that hasn't been done here. Jennings is too broad for this case to not have qualified immunity apply. It's well settled that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. The jury's finding of excessive force in this case doesn't end an officer's entitlement to qualified immunity. If qualified immunity only existed in situations where there wasn't a finding of excessive force, there'd be no need for the immunity. The aim of the doctrine is to avoid that chilling effect of second-guessing officers like Officer Roscoe, who are acting in the heat of events, which in this case it was a chaotic crowd. There were multiple people resisting arrest, multiple people that were intoxicated. And so Officer Roscoe's conduct is defensible, even if imperfect. What's your strongest case for the principle that this isn't clearly established law? Because it's a multiple-use-of-force scenario, I guess that depends on what specific force that. How about specifically the claim that Roscoe punched Mr. Heredia? I think it was eight to ten times. Godreau v. Municipality of Salem, Berube v. Conley. A case out of the 11th Circuit, Fields v. City of Aventura. And a district court case, McMullen v. Pearson. Thank you very much. Thank you. And you're excused. Thank you, Counsel. That concludes argument in this case.